UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


RICARDO NUNN,

              Plaintiff,                          Hon. Janet T. Neff

v.                                                  Case No. 1:14 CV 523

SAMI HEEKE, et al.,

              Defendants.
_____/

**REPORT AND RECOMMENDATION**

        This matter is before the Court on <u>Defendants' Motion for Summary Judgment</u>.  (Dkt. #14).  Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that Defendants' motion be **granted** and this action **dismissed**.


**BACKGROUND**

        Plaintiff is presently incarcerated by the Michigan Department of Corrections (MDOC) at the Saginaw Correctional Facility although the events giving rise to this action occurred at the Carson City Correctional Facility (DRF).  Plaintiff has sued the following DRF personnel: Officers Heeke and Mangus; Lieutenant Riggle; Nurse Silvernail; and Deputy Warden L. Krick.

        Plaintiff makes the following allegations in his complaint.  On November 13, 2013, Plaintiff got into a fight with another inmate.  Defendant Heeke gave Plaintiff a direct order to stop fighting.  Plaintiff failed to comply, at which point Heeke fired his taser into Plaintiff's back.  After being tased, Plaintiff no longer represented a threat to Heeke or the inmate with whom he had been

fighting. Defendant Heeke nevertheless continued to activate his taser, "shoot[ing] electrical current through" Plaintiff's body. Defendant Riggle subsequently escorted Plaintiff to segregation during which time Plaintiff questioned Riggle about the proper procedure for utilizing a taser. Riggle did not respond to Plaintiff, but instead asked Plaintiff how it felt to be tased.

After Plaintiff was placed in a holding cell, Defendant Mangus arrived and began to remove the taser probes from Plaintiff's back. Plaintiff objected and requested that Mangus call someone from health services to remove the probes. Mangus disregarded Plaintiff's request and continued to remove the probes from Plaintiff's back. While he was in the holding cell waiting to be taken to health services, Plaintiff told the segregation staff that his back hurt and was bleeding. Plaintiff was subsequently taken to health services where Defendant Silvernail cleaned and bandaged the areas on Plaintiff's back where the taser probes had punctured his skin. Plaintiff asked Silvernail about the proper procedure for removing taser probes, but Silvernail declined to respond.

Plaintiff alleged that Defendants violated "the cruel and unusual punishment clause of the Eighth Amendment, for the misuse of force." Plaintiff's claims have all been dismissed save his claims against Defendants Heeke and Mangus who now move for summary judgment and for qualified immunity. Plaintiff has failed to respond to Defendants' motion.

## LEGAL STANDARD

Summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party moving for summary judgment can satisfy its burden by demonstrating "that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential

element of his or her case." *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005); *see also*, *Amini v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).  The fact that the evidence may be controlled or possessed by the moving party does not change the non-moving party's burden "to show sufficient evidence from which a jury could reasonably find in her favor, again, so long as she has had a full opportunity to conduct discovery." *Minadeo*, 398 F.3d at 761 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986)).

Once the moving party demonstrates that "there is an absence of evidence to support the nonmoving party's case," the non-moving party "must identify specific facts that can be established by admissible evidence, which demonstrate a genuine issue for trial." *Amini*, 440 F.3d at 357 (citing *Anderson*, 477 U.S. at 247-48; *Celotex Corp. v. Catrett*, 477 U.S. at 324).  While the Court must view the evidence in the light most favorable to the non-moving party, the party opposing the summary judgment motion "must do more than simply show that there is some metaphysical doubt as to the material facts." *Amini*, 440 F.3d at 357.  The existence of a mere "scintilla of evidence" in support of the non-moving party's position is insufficient. *Daniels v. Woodside*, 396 F.3d 730, 734-35 (6th Cir. 2005) (quoting *Anderson*, 477 U.S. at 252).  The non-moving party "may not rest upon [his] mere allegations," but must instead present "significant probative evidence" establishing that "there is a genuine issue for trial." *Pack v. Damon Corp.*, 434 F.3d 810, 813-14 (6th Cir. 2006) (citations omitted).

Moreover, the non-moving party cannot defeat a properly supported motion for summary judgment by "simply arguing that it relies solely or in part upon credibility determinations." *Fogerty v. MGM Group Holdings Corp., Inc.*, 379 F.3d 348, 353 (6th Cir. 2004).  Rather, the non-moving party "must be able to point to some facts which may or will entitle him to judgment, or refute the proof of the moving party in some material portion, and. . .may not merely recite the incantation, 'Credibility,'

and have a trial on the hope that a jury may disbelieve factually uncontested proof." *Id.* at 353-54. In sum, summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Daniels*, 396 F.3d at 735.

While a moving party without the burden of proof need only show that the opponent cannot sustain his burden at trial, *see Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *Minadeo*, 398 F.3d at 761, a moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). "Where the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. SCHWARZER, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)). The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000); *Cockrel*, 270 F.2d at 1056 (same). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

## ANALYSIS

I.  **Defendant Heeke**

Plaintiff asserts that Defendant Heeke, in response to his failure to comply with a direct command to stop fighting, fired a taser into his back.  Plaintiff also asserts that Heeke continued to activate his taser, sending electrical current through his body, even after he was subdued.  Defendant Heeke asserts that he is entitled to relief because Plaintiff has failed to properly exhaust these claims.

Pursuant to 42 U.S.C. § 1997e(a), a prisoner asserting an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust all available administrative remedies.  *See Porter v. Nussle*, 534 U.S. 516, 524 (2002).  Prisoners are no longer required to demonstrate exhaustion in their complaints.  *See Jones v. Bock*, 549 U.S. 199, 216 (2007).  Instead, failure to exhaust administrative remedies is "an affirmative defense under the PLRA" which the defendant bears the burden of establishing.  *Id.*  With respect to what constitutes proper exhaustion, the Supreme Court has stated that "the PLRA exhaustion requirement requires proper exhaustion" defined as "compliance with an agency's deadlines and other critical procedural rules."  *Woodford v. Ngo*, 548 U.S. 81, 90-93 (2006).  In *Bock*, the Court reiterated that

> Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'  The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion.

*Bock*, 549 U.S. at 218.

Michigan Department of Corrections Policy Directive 03.02.130 articulates the applicable grievance procedures for prisoners in MDOC custody.  Prior to submitting a grievance, a prisoner is required to "attempt to resolve the issue with the staff member involved within two business days after

becoming aware of a grievable issue, unless prevented by circumstances beyond his/her control or if the issue falls within the jurisdiction of the Internal Affairs Division in Operations Support Administration." Mich. Dep't of Corr. Policy Directive 03.02.130 ¶ P. If this attempt is unsuccessful (or such is inapplicable), the prisoner may submit a Step I grievance. *Id.* The grievance policy provides the following directions for completing grievance forms: "The issues should be stated briefly but concisely. Information provided is to be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places, and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ R. The prisoner must submit the grievance to a designated grievance coordinator, who assigns it to a respondent. *Id.* at ¶ V.

If the prisoner is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II within ten business days of the response, or if no response was received, within ten business days after the response was due. *Id.* at ¶ BB. If the prisoner is dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal the matter to Step III. *Id.* at ¶ FF. The Step III grievance must be submitted within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.*

In support of his motion for summary judgment, Defendant Heeke has submitted evidence that during the time period relevant in this matter, Plaintiff pursued only one grievance (DRF-13-11-02335-18a) through all three steps of the prison grievance process. (Dkt. #15, Exhibit 2). Plaintiff submitted this particular grievance on November 13, 2013, alleging that Defendant Mangus improperly removed the taser probes from his back following the aforementioned incident. Plaintiff asserted that pursuant to MDOC policy, the only people authorized to remove taser probes from an inmate's body are:

(1) the officer who fired the taser, or (2) a nurse. Plaintiff pursued this matter through all three steps of the grievance process. This grievance, however, does not address Plaintiff's allegations against Defendant Heek.

The evidence submitted by Defendant Heeke is sufficient to satisfy his burden that Plaintiff failed to properly exhaust the claims against him. By declining to respond to the present motion, Plaintiff has failed to challenge or otherwise call into question the evidence submitted by Heeke. Accordingly, the undersigned recommends that Defendant Heeke's motion for summary judgment be granted.

II.          **Defendant Mangus**

Plaintiff asserts that Defendant Mangus removed, over Plaintiff's protest, the taser probes from his back. Plaintiff asserts that Mangus' actions constituted the use of excessive force in violation of the Eighth Amendment. Defendant Mangus asserts that he is entitled to qualified immunity as this claim. The Court agrees.

The doctrine of qualified immunity recognizes that government officials must be able to carry out their duties without fear of harassing litigation. *See Davis v. Scherer*, 468 U.S. 183, 195 (1984). As is well recognized, they can do so only if they reasonably can anticipate when their conduct may give rise to liability for damages, and if unjustified lawsuits are quickly terminated. *Id.* Generally, when government officials perform discretionary functions, they are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *see also, Behrens v. Pelletier*, 516 U.S. 299, 301 (1996). The question whether a defendant enjoys

qualified immunity is a question of law for the Court to resolve. *See Virgili v. Gilbert*, 272 F.3d 391, 392 (6th Cir. 2001).

When evaluating claims of qualified immunity, the Court employs a two-step analysis. The Court first determines "whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).  If such fail to establish a violation of the plaintiff's constitutional rights, the defendant is entitled to immunity. *See Callahan*, 555 U.S. at 232.  On the other hand, if the facts establish a violation of the plaintiff's constitutional rights, the Court must then determine whether the right in question was "clearly established" at the time the defendant acted.  The defendant is entitled to qualified immunity unless his "conduct violated a clearly established constitutional right." *Id.*  The inquiry whether a particular right was clearly established "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Moldowan v. City of Warren*, 578 F.3d 351, 375 (6th Cir. 2009) (citing *Saucier*, 533 U.S. at 201).  The contours of the right in question "must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Fisher v. Harden*, 398 F.3d 837, 845 (6th Cir. 2005) (quoting *Saucier*, 533 U.S. at 202).  The focus of this inquiry is "on whether the officer had fair notice that her conduct was unlawful." *Lyons v. City of Xenia*, 417 F.3d 565, 579 (6th Cir. 2005).

When a defendant asserts qualified immunity, the plaintiff bears the burden to demonstrate: (1) he suffered a violation of a constitutional right, and (2) that the right in question was clearly established at the time of the defendant's alleged misconduct. *See Benison v. Ross*, 765 F.3d 649, 664 (6th Cir. 2014).  Defendant Mangus asserts that he is entitled to qualified immunity in this matter.

Plaintiff has failed to respond to the present motion.  Moreover, the allegations in Plaintiff's complaint fail to demonstrate that he suffered a violation of a constitutional right.

The Eighth Amendment to the United States Constitution prohibits cruel and unusual punishment.  U.S. Const. amend. VIII.  The excessive use of force which results in the unnecessary and wanton infliction of pain violates this provision.  *See Whitley v. Albers*, 475 U.S. 312, 319 (1986).  Claims alleging the excessive use of force have both a subjective and an objective component.  *See Wilson v. Seiter*, 501 U.S. 294, 298-99 (1991).

The objective component of the analysis examines whether the pain or deprivation allegedly suffered by the prisoner was "sufficiently serious" to implicate the Eighth Amendment.  *Id.*  To be "sufficiently serious," the prison official's act or omission must deny the prisoner of "the minimal civilized measure of life's necessities," *Farmer v. Brennan*, 511 U.S. 825, 834 (1994), as defined by contemporary standards of decency.  *See Hadix v. Johnson*, 367 F.3d 513, 525 (6th Cir. 2004).  Such standards "always are violated" when "prison officials maliciously and sadistically use force to cause harm."  *Hudson v. McMillian*, 503 U.S. 1, 9 (1992).  However, "*de minimis* uses of physical force" do not violate the Eighth Amendment "provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'"  *Id.* at 9-10.

The subjective component of the analysis examines whether the prison official's conduct reflected "obduracy and wantonness" or was instead the product of "inadvertence or error in good faith."  *Wilson*, 501 U.S. at 299.  In this respect, the relevant inquiry is "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm."  *Whitley*, 475 U.S. 320-21.  When evaluating whether a prison official's conduct falls short of this standard, the Court must consider the following factors: (1) the need for the application of

force, (2) the relationship between such need and the force used, (3) the threat reasonably perceived by the prison official, and (4) any efforts undertaken to temper the severity of the response. *Hudson*, 503 U.S. at 7. The absence of injury, while relevant, is not dispositive. *Id.*

The gravamen of Plaintiff's claim against Defendant Mangus is simply that Plaintiff preferred that the taser probes be removed by "someone from Health Services" rather than Mangus. Plaintiff does not allege that Mangus removed the probes in a violent or unreasonable manner or that he suffered injury as a result of Mangus' actions. Plaintiff's allegations do not establish that Mangus deprived him of "the minimal civilized measure of life's necessities" or that Mangus acted with the subjective intent to cause harm. In sum, Plaintiff has failed to establish that he suffered a violation of his Eighth Amendment rights. Accordingly, the undersigned recommends that Defendant Mangus is entitled to qualified immunity.

## CONCLUSION

For the reasons articulated herein, the undersigned recommends that Defendants' Motion for Summary Judgment, (Dkt. #14), be **granted** and this action **dismissed**. The undersigned further recommends that appeal of this matter would not be taken in good faith. *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997); 28 U.S.C. § 1915(a)(3).

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file

objections within the specified time waives the right to appeal the District Court's order.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

                                                        Respectfully submitted,


Date:  December 9, 2014                     /s/ Ellen S. Carmody_____
                                                        ELLEN S. CARMODY
                                                        United States Magistrate Judge